**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13–cv–01930–RM—MJW

DANIEL LYSYJ, and
DAVID RHOADS, on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

MILNER DISTRIBUTION ALLIANCE, INC. d/b/a MAXX SUNGLASSES, a Colorado corporation,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant Milner Distribution Alliance, Inc.'s Motion to Stay Proceedings and Compel Arbitration as to Plaintiff, Daniel Lysyj, Only ("Motion to Compel Arbitration") (ECF No. 31), as well as Plaintiffs' Motion to Certify Conditionally A Collective Action Under the Fair Labor Standards Act ("Motion to Certify") (ECF No. 7). Plaintiffs have brought suit alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay employees who worked more than 40 hours per week overtime pay. In the Motion to Certify, Plaintiffs request that the Court conditionally certify this FLSA claim as a collective action as authorized by 29 U.S.C. § 216(b). In the Motion to Compel Arbitration, Defendant points to an arbitration agreement between itself and Plaintiff Daniel Lysyj and it seeks a stay and to compel arbitration as to Plaintiff Lysyj's claims only. This Court held a hearing on both motions on January 10, 2014. This order results.

## I. BACKGROUND

Milner Distribution Alliance, Inc. ("Defendant"), which does business as Maxx Sunglasses in Monument, Colorado, sells sunglasses on a wholesale basis to retail customers nationwide. It is owned and operated by the Milner family—specifically, Nancy Milner and Richard Milner, both of whom are actively engaged in operating the company according to Plaintiffs. The named Plaintiffs in the instant suit, Daniel Lysyj and David Rhoads, worked for Defendant as Sales Representatives. Their primary job as Sales Representatives was to make sales calls by telephone from a call center in Monument, Colorado. All Sales Representatives were paid on an hourly basis, filling out weekly timesheets. Sales Representatives were also eligible to receive commissions and bonuses based on their volume of sales.

One of the two named Plaintiffs, Mr. Rhoads, claims that when he first began working for Defendant, he recorded the actual hours he worked on his weekly timesheets, but then he was told by the payroll clerk to redo his timesheet to reflect that he only worked 40 hours. This command, he claims, was reiterated by a supervisor, who told him "the owners had instructed her that everyone was to record only 40 hours per week" and that the employees "wouldn't be paid for more than 40 hours." (ECF No. 7-6 at 2.)[1] Mr. Rhoads alleges that his regularly scheduled work hours were 7:30 a.m. until 4:30 p.m., and that he "didn't receive meal breaks." (*Id*.) In practice, he says, he routinely worked until 5:30 or 6:30 p.m. at least three days per week, and worked two Saturdays per month from 9 a.m. to 1 p.m., and also regularly worked from home preparing reports during the evenings.

The other named Plaintiff, Daniel Lysyj, began working for Defendant in December of 2011 as a Sales Representative. In approximately June of 2012 he was promoted to the position

---

[1] Throughout this Order, references to documents and pleadings from these proceedings shall be referred to by electronic case management docketing number, as such: ECF No. __. As for documents filed with attachments, the attachments will be referenced as such: ECF No. 1-1, to signify the first attachment to Document 1.

2

of Reorder Sales Manager. On February 12, 2013, he signed an agreement with Defendant entitled "Confidentiality and Non-Competition Agreement, and Pre-Dispute Arbitration Agreement." (ECF No. 31-2.) That agreement stated that

> [a]ny dispute arising in connection with this Agreement or Employee's employment (except for equitable or injunction actions pursuant to paragraph 9 above, or claims by the employee for worker's compensation or unemployment compensation) shall be submitted to binding arbitration by an arbitrator with Judicial Arbiters Group (JAG) under the American Arbitration Association's rules for the resolution of employment disputes, in Denver, Colorado. Judgment upon any award rendered by arbitration may be entered in any court having jurisdiction thereof. The attorneys' fees and costs of the prevailing party in connection with the arbitration, as well as any costs of AAA, JAG and the arbitrator, shall be assessed against the losing party.

The agreement also states that "it shall be governed by and construed in accordance with the laws of the state of Colorado." (*Id*. at 5.) The agreement includes a "Partial Invalidity clause, stating that "[i]f any provision of this agreement is found to be in violation of law, unenforceable, void or voidable, then that provision alone shall be deemed to be deleted from the agreement, and the balance of the agreement shall be enforced between the parties." (*Id*. at 4.)

## II. LEGAL STANDARD AND ANALYSIS

In the Motion to Certify, Plaintiffs ask for an order conditionally certifying a class action under the FLSA and an authorization of notice to all similarly situated persons. In the Motion to Compel Arbitration, Defendant asks this Court to stay Plaintiff Daniel Lysyj's claims and compel arbitration in accordance with the Federal Arbitration Act (the "FAA"). Both motions are granted as set forth below.

**A.     Motion to Certify**

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of overtime provisions. It provides in part:

> An action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer…in any Federal

3

>or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

The FLSA requires that non-exempt employees be paid overtime compensation for time worked in excess of forty (40) hours in one work week. 29 U.S.C. § 207(a). The minimum rate of compensation that an employer must pay a non-exempt employee for overtime work is one-and-one-half times the employee's hourly rate. 29 U.S.C. § 207(a)(1). The FLSA provides an exemption from the overtime requirement for employees who are employed in retail or service establishments as commission salesperson if one half of their compensation for a representative period (not less than one month) represents commissions, and the regular rate of pay of such employees is in excess of one-and-one-half times the minimum hourly rate applicable to them. 29 U.S.C. § 207(i).

The Tenth Circuit has approved the use of a two-step process for determining whether putative class members are similarly situated to the named plaintiff. In *Thiessen v. General Electric Capital Corp.*, the court outlined the case by case or "ad hoc" method as follows: at the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated. 267 F.3d 1095, 1105 (10th Cir. 2001). For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id*. at 1102. "The standard for certification at this stage is a lenient one." *Boldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005). At this stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits of declarations." *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) (quoting *Renfro v. Spartan Computer Servs., Inc.*,

4

243 F.R.D. 431, 434 (D. Kan. 2007)).

In the second stage, which comes at the conclusion of discovery and often in the context of a defense motion to decertify the class, the court applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a class action. *Thiessen,* 267 F.3d at 1102-03; *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132-33 (D. Colo. 2011).

Defendant, while acknowledging the leniency of the standard for conditional certification, mounts the following two arguments against granting the Motion to Certify Class: first, that the motion is premature as Mr. Lysyj's claims are subject to arbitration; second, that Plaintiffs are not proper class representatives and that they failed to make any showing as to other similarly situated putative plaintiffs. As to the first argument, it is addressed by the section below where this Court will resolve Defendant's pending Motion to Compel Arbitration. Regardless of what happens to the claims of Mr. Lysyj, there is another named Plaintiff in this case. As to the second argument, it is addressed herein.

Defendant argues that Plaintiffs have not put forth "credible, admissible evidence that they are appropriate class representatives or that there are other similarly situated parties." (ECF No. 33 at 7.) As to the "credible, admissible evidence" that Plaintiffs are alleged to have omitted, Defendant is mistaken as to the burden at this stage—at the conditional certification stage, Plaintiffs are required merely to present "substantial allegations" that all members of the putative class were subject to a single decision, policy or plan. *See, e.g.*, *Thiessen*, 267 F.3d at 1102; *Kinne v. Rocky Mountain EMS, Inc.*, No. 12-CV-02710-REB-CBS, 2013 WL 4882532, at *2 (D. Colo. Sept. 12, 2013). Even looking solely to the allegations of the complaint and the affidavit of David Rhoads, this Court finds that Plaintiffs have satisfied the "minimal burden

5

necessary to the conditional certification of a collective action under § 216(b)." *Kinne*, 2013 WL 4882532.

Plaintiffs seek to certify a collective action composed of "all current and former employees of Milner Distribution Alliance, Inc., who were employed as Sales Representatives, after July 7, 2010, and who worked more than 40 hours in a single work week and were not paid one-and-one-half times their regular rate for hours worked over forty in a single work week." (ECF No. 1 at 2.) They allege that the single decision, policy or plan was made to pay all such workers on a salaried and commission basis and to not pay them one-and-one-half times their regular rate for hours worked over forty, and that this decision was made by the supervisors and management of Milner Distribution Alliance, Inc.

Defendant contends that there are at least three distinct divisions within the sales department of Maxx Sunglasses ("Sales Representative for new customers, Sales Representative for reorders, and Reorder Sales Manager") "which each involve different job duties and responsibilities." (ECF No. 33-3 at 2.) In essence, Defendant accuses Plaintiff of attempting to combine three separate jobs into one for conditional collective action certification purposes, when in reality, people in the different positions are not "similarly situated" to one another. Plaintiffs respond that they "only seek to certify a class of Sales Representatives," and that the fact that they worked in different departments is irrelevant to the central inquiry at this stage— whether the putative plaintiffs were the victim of a single decision, policy or plan as it pertains to pay. Accepting the Plaintiffs' allegations, as I must at this stage, that "all Sales Representatives, regardless of department, were subject to the same pay plan," Plaintiffs' Motion to Certify will be granted. (ECF No. 34 at 7.)

Defendant also contends that Plaintiffs are inappropriate class representatives, each for distinct reasons. As to Mr. Lysyj, this Court will not address his status as a representative in this section because it will be addressed in the next section. As to Mr. Rhoads, Defendant points to the fact that Mr. Rhoads performed multiple jobs while working for Defendant, and that he "does not even allege during what periods of time he allegedly performed each set of duties" and thus "it is even unclear whether his claims are viable based upon the statute of limitations." (ECF No. 9 at 33.) Again, however, this argument would require the Court to accept the notion that employees working in distinct departments within Maxx Sunglasses cannot be "similarly situated," and the Court is not prepared to do that. Mr. Rhoads has alleged that while working as a Sales Representative from January 2010 until June 2012 that he was not compensated for hours worked over 40. Plaintiffs have met their burden as to conditional certification, and it is now up to Defendants at a later stage to demonstrate that Mr. Rhoads or any other putative class members' claims should be barred, either because they are exempt employees, or by the statute of limitations, or by any other defense.

*Plaintiffs' Proposed Notice*

Plaintiffs request that the Court authorize their attorneys to provide notice and a consent form to all current and former Sales Representatives employed by Milner Distribution Alliance, Inc. after July 18, 2010. (ECF No. 7 at 9.) Plaintiffs included a proposed notice and consent form with their motion (ECF Nos. 7-4 and 7-5) and then included a sample notice authorized by Judge Wiley Y. Daniel of this District in a prior case (ECF No. 34-1). Defendants argue that Plaintiffs' proposed notice is improper, but their argument as to the problems with the notice itself is vague at best. They argue that "any notice authorized by this Court should fully apprise potential plaintiffs of the full consequences of joining this lawsuit," and say that the proposed

notice "does not explain any of the consequences." (ECF No. 12.) They do not elaborate on this demand, but this Court thinks the proposed notice with some additions based on Judge Daniel's approved notice in another case is adequate.

Plaintiffs "recognize that authority exists supporting Defendant's position that the notice should contain language advising opt-in plaintiffs about potential discovery obligations." (ECF No. 34 at 9.) They "do not object to including language identical to language approved by Judge Daniel in *Burke v. Alta Colleges*." (*Id.*) Plaintiffs also do not object to including language describing the fee arrangement under which any potential representation would occur, as follows: "Cornish & Dell'Olio will provide representation on a contingent fee basis which means that your attorney's fees will be paid from amounts collected by settlement or judgment and will be subject to approval by the Court."

The Court has reviewed Plaintiff's proposed notice and Defendant's objections to same, and approves the form of notice, with all changes and additions, that is attached as Exhibit A to this Order.[2]

**B.     Motion to Compel Arbitration**

The Federal Arbitration Act (the "FAA") requires a court to compel arbitration pursuant to the terms of the parties' agreement if a valid, enforceable arbitration agreement exists and the asserted claims are within the scope of that agreement. 9 U.S.C. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitration provisions should be resolved in favor of

---

[2] Defendant also objects to the proposed consent form on multiple grounds, principally that the notice fails to inform putative opt-in plaintiffs of the consequences and alternatives to joining the lawsuit. (ECF No. 33 at 11-12.) They also object that the consent form "[f]ails to inform putative opt-in plaintiffs that they cannot opt in to this lawsuit if they signed an arbitration provision." (ECF No. 33 at 12.) This Court disagrees that the consent form, which is to be sent alongside the notice, is deficient, and further declines to make any blanket pronouncements as to the unknown arbitration provisions that other potential opt-in plaintiffs may or may not have signed. Although the concern as to arbitration is well taken, what language may be included in such agreements, whether severability provisions may exist, and the circumstances surrounding execution are too uncertain for the Court to decide in a vacuum that such person should not, at this stage, be members of the collective action.

arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, when the parties dispute the existence of a valid arbitration agreement, there is no presumption in favor of arbitration. *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).

Mr. Lysyj does not dispute that he signed the Arbitration Agreement. (ECF No. 35 at 1.) Rather, he claims that the agreement "contains an unenforceable fee and cost shifting provision that deprives Mr. Lysyj of a full vindication of his FLSA rights in arbitration and [that] the Agreement is unconscionable in both the Defendant's control over the arbiter selection process as well as in the nature and purpose of its very creation." (*Id*. at 2.)

As to the first argument, the fee and cost shifting provision, Plaintiff says that "the final sentence of the Arbitration Agreement directly contradicts the enforcement scheme established in the FLSA" and that "[b]y placing a fee shifting provision in its Arbitration Agreement Defendant has attempted to contract around substantive provisions of the FLSA meant to vindicate a plaintiff's private rights and Congressional policy." (*Id.* at 4,5.)

In *Shankle v. B-G Maintenance Management of Colorado, Inc*. ("*Shankle*"), the Tenth Circuit considered whether a mandatory arbitration agreement is unenforceable under the FAA when it requires the employee to pay a portion of the arbitration costs. 163 F.3d 1230 (10th Cir. 1999). The Tenth Circuit found that such an agreement is not enforceable where the costs to be borne by the employee under the fee-splitting agreement effectively deprive the employee of an accessible forum in which to vindicate his or her statutory rights. *Id*. at 1234-35.

In *Perez v. Hospitality Ventures-Denver LLC*, an arbitration agreement was declared unenforceable where there was a fee splitting provision, but no "severability or savings clause that allows [the court] to enforce the agreement by striking unenforceable terms." 245 F. Supp. 2d 1172, 1174 (D. Colo. 2003). In *Perez*, the Defendants "offer[ed] to modify the arbitration agreement to require them to pay all arbitration costs," but the court found that even if that offer "was sufficient to overcome *Shankle*'s holding … the arbitration agreement would be unenforceable as a result of the unilateral right to modify the agreement" included on behalf of the Defendants in that case. *Id*.

The instant case is distinguishable from *Perez* (and *Shankle*) in two important ways— first, there is no unilateral right to modify the agreement, or any other broad provision that would render the agreement unenforceable as a whole, as in Perez. Second, there is a severability/savings clause, which allows me to simply sever and strike any unenforceable provisions without rendering the entire agreement void. Where there is a severability or savings clause, courts have found that will allow them to enforce the agreement while striking the unenforceable terms. *See, e.g*., *Fuller v. Pep Boys--Manny, Moe & Jack of Delaware, Inc*., 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000).

Pursuant to the Tenth Circuit's decision in *Shankle*, I find that as far as the arbitration agreement may ultimately impose the entirety of the arbitration fees on Mr. Lysyj in this case, it is unenforceable. Therefore, the last sentence of the paragraph entitled "Arbitration" is unenforceable and stricken. However, I also find that the "Partial Invalidity" clause allows me to disregard the fee-splitting provision and uphold the remainder of the argument. The fee-splitting agreement does not affect other portions of the agreement; it does not "permeate the complete contract to such an extent as to affect its enforceability entirely." *N. L. R. B. v. Tulsa Sheet Metal*

*Works, Inc.*, 367 F.2d 55, 59 (10th Cir. 1966) (holding that "employment contracts should not be completely obliterated because some provisions are beyond the legal limits of the parties' bargaining power").

Counsel for Plaintiff has also raised issues with respect to Mr. Lysyj's finances, the time he had to review the agreement, and the arbiter selection process. The Court heard from both parties on these matters at the hearing, and does not find these arguments to be sufficient to derail the binding arbitration agreement in this case.

Under the FAA, a "court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000) (citing *McMahan Sec. Co. v. Forum Capital Markets*, 35 F.3d 82, 85 (2d Cir.1994)). Accordingly, this Court finds that the claims of Mr. Lysyj should be stayed pending arbitration.

### III. CONCLUSION

Based on the foregoing, it is ORDERED that:

1) Plaintiffs' Motion to Certify Class (ECF No. 7) is GRANTED;

2) Defendant's Motion to Compel Arbitration (ECF No. 31) is GRANTED;

3) The claims of Mr. Lysyj are STAYED pending arbitration;

4) The fee-splitting provision in the arbitration agreement is hereby STRICKEN.


DATED this 24th day of January, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

## Notice to Sales Representatives Employed By Milner Distribution Alliance, Inc.

This is a Notice to all Sales Representatives who were employed by Milner Distribution Alliance, Inc. between [insert July 18, 2010 or later date] and the present who worked more than 40 hours in a single work week and were not paid time-and-a-half for hours worked over forty.

A lawsuit has been filed in the United States District Court, District of Colorado on behalf of Sales Representatives against Milner Distribution Alliance, Inc., alleging violations of the federal Fair Labor Standards Act and seeking to recover overtime wages and liquidated damages (double damages). Defendant Milner Alliance, Inc. denies the allegations and believes that Sales Representatives are and were properly paid under the Fair Labor Standards Act.

If you were employed by Milner Distribution Alliance, Inc. as a Sales Representative between [insert July 18, 2010 or later date] and the present and were not paid time and a half for hours worked over 40 in a single work week you may join in this action to recover unpaid wages by completing the enclosed Consent Form and mailing it to:

    Donna Dell'Olio
    Cornish & Dell'Olio,
    P.C. 431 North Cascade
    Ave
    Colorado Springs, Colorado 80903

If you are a **current employee** of Milner Distribution Alliance, Inc. you may join in the lawsuit in order to recover unpaid wages and liquidated damages. You are protected by federal law from any retaliation by Milner Distribution Alliance, Inc. and your employment will not be affected if you chose to join in this lawsuit.

If you signed an arbitration agreement with Milner Distribution Alliance, Inc., that agreement may be enforceable and require arbitration to resolve your disputes regarding salary. You should obtain an opinion from a lawyer, or the below law firm, as to whether you may still have a claim for unpaid

overtime which can be litigated in the United States District Court in this or other actions.

You have 60 days from the date this notice is mailed to return the form to Cornish & Dell'Olio, P.C. for filing in the action. **The statute of limitations will continue to run, reducing your claim, until the date the signed Consent Form is received by the Court.**

If you choose to join this lawsuit, you will be bound by the judgment and may be impacted by any settlement of the case. The decisions and agreements made and entered into by Plaintiffs will be binding on you if you join this lawsuit. If you choose to join this lawsuit, you may be required to respond to written requests for information and documents, produce documents, and appear for depositions, hearings or trial to provide sworn testimony under oath.

If you chose to join in the lawsuit you may 1) represent yourself 2) hire a lawyer of your choice or 3) hire Cornish & Dell'Olio, P.C., 431 North Cascade Avenue, Colorado Springs, Colorado 80903, tel. (719) 475 1204, email: ddellolio@cornishanddellolio.com to represent you.

Cornish & Dell'Olio will provide representation on a contingent fee basis which means that your attorney's fees will be paid from amounts collected by settlement or judgment and will be subject to approval by the Court.

**THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO.THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR DEFENDANT'S DEFENSES.**